# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO.: 1:16-CR-34-TLS |
| | ) | |
| JAMIE BUCKNER | ) | |

## SENTENCING OPINION

The Defendant, Jamie Buckner, pled guilty to eight counts of theft of United States property. As part of a check fraud scheme, the Defendant presented over one hundred checks during a five-month period to post offices throughout Indiana for the purchase of stamps and shipping services. The checks were written on accounts with insufficient funds. During the last transaction that she completed before her arrest, a man accompanied the Defendant to the post office. The man's check, instead of one bearing the Defendant's name, was presented in exchange for nearly $800 worth of goods. Count 8, which is based on this transaction, thus charges the Defendant with willfully and knowingly, aiding, abetting, counseling or commanding another individual to steal, purloin, and convert to her own use or the use of another, U.S. postage stamps and merchandise belonging to the United States Postal Service, by assisting in the presentation as payment a check, knowing that it would not be honored. The probation officer who prepared the Presentence Investigation Report (PSR) in anticipation of sentencing relied on the conduct that forms the basis for Count 8 to apply a two-level enhancement to the Defendant's base offense level under U.S.S.G. § 3B1.1 for being an organizer, leader, manager, or supervisor.

The Defendant objected to the enhancement. On August 11, 2015, the Court held an evidentiary hearing in which the Defendant and her husband testified. The purpose of the

testimony was to support the Defendant's objection, as well as her request for a sentence below the advisory Guideline range. The parties have submitted post-hearing briefs. This Sentencing Opinion provides a ruling on the objection and other matters directly impacting the calculation of the advisory Guidelines.

## ANALYSIS

"When calculating a sentence, a district court first calculates the proper range under the sentencing guidelines. It then considers that guideline range in addition to any of the other relevant sentencing factors under 18 U.S.C. § 3553(a) before arriving at the appropriate sentence." *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008).

Facts relevant to sentencing should be proved by a preponderance of the evidence. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009); *see also United States v. Krieger*, 628 F.3d 857, 862 (7th Cir. 2010) (advising that sentencing factors that do not increase the defendant's sentence beyond the statutory range may be found by the court at sentencing by a preponderance of the evidence). "A proposition proved by a preponderance of the evidence is one that has been shown to be more likely than not." *United States v. Davis*, 682 F.3d 596, 612 (7th Cir. 2012). With respect to sentencing,

> a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. A corollary to this general principle is the rule that a sentencing judge may consider relevant information without regard to the rules of evidence provided that the information has a sufficient indicia of reliability to support its probable accuracy.

*United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005) (quotation marks, ellipses, and brackets omitted). Reliability is determined based on the totality of evidence before the court,

2

and a sentencing determination may be premised on any basis that is supported by the record. *Id.* at 790.

A.      **Aggravating Role in the Offense**

The Defendant objects to the 2-level increase assessed under U.S.S.G. § 3B1.1(c) for being an organizer, leader, manager, or supervisor in any criminal activity. A defendant's offense level is increased pursuant to U.S.S.G. § 3B1.1(c) if she was an organizer, leader, manager, or supervisor of one or more participants in criminal activity. U.S.S.G. § 3B1.1, comment n.2. A participant is someone who is criminally responsible for the commission of the offense even if the person is not convicted. *United States v. Zuno*, 731 F.3d 718, 723 (7th Cir. 2013); U.S.S.G. § 3B1.1, comment n.1 (noting that someone who is not criminally responsible for the commission of the offense, such as an undercover law enforcement officer, is not a participant).

Factors to consider when determining whether the enhancement applies include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. §3B1.1, comment n.4. Under Seventh Circuit case law, courts are not required to consider these factors, but to the extent they "help to 'straightforwardly' identify whether a defendant 'helps manage or supervise a criminal scheme,' courts may continue to consider them." *United States v. Weaver*, 716 F.3d 439, 443 (7th Cir. 2013) (quoting *United States v. Grigsby*, 692 F.3d 778, 790

3

(7th Cir. 2012)).

Here, the basis for the enhancement is set forth in paragraphs 26–32 of the PSR, which sets out the offense conduct that is the basis for Count 8 of the Indictment. These facts are based on Postal Inspector Andrew Gottfried's investigation into numerous bad checks that had been presented to United States postal offices throughout Indiana. In response to these bad checks, postal employees throughout the Greater Indiana District had received electronic mail notifications regarding a possible check fraud scheme involving insufficient fund checks in the name of Jamie S. Buckner, the Defendant in this case. Because of the electronic bulletin, the Defendant was turned away from a post office in Fort Wayne on August 7, 2015.

On November 18, 2015, an employee of the Waynedale postal station reported in an electronic mail message to Inspector Gottfried that he believed that the Defendant had been at the Waynedale Station that morning with a man who was in his mid-twenties. According to the Waynedale station employee who completed the transaction, a check, number 0003 drawn on Old National Bank in the amount of $784.00 in the name of Lincoln Shepherd, was presented for payment. During the transaction, the woman took charge and did all of the talking. The woman advised that the man (Shepherd) was doing a mass mailing for his business and wanted stamps that would make a statement. The woman wrote the check and directed the man to sign it and present his identification.

After the Defendant and Shepherd left the Waynedale station, they went to the Hessen Cassel Post Office. An employee recognized the Defendant as the woman who had passed bad checks at the station before, and the manager contacted the Fort Wayne Police Department about a possible theft in progress by Lincoln Shepherd and Jamie Buckner. A police officer responded

and approached the Defendant and Shepherd, who advised they were at the post office to purchase stamps. The officer learned from the station manager that the cashier recognized the Defendant as the same woman who had passed bad checks at the station before. He also advised that, earlier in the day, the man and woman had passed a check in Lincoln Shepherd's name at the Waynedale Branch for almost $800. The manager called the bank and learned that the check would not clear. Based on communication between the responding officer and Inspector Gottfried, the Defendant and Shepherd were transported to the police department to be interviewed.

During Shepherd's interview, he stated that he told the Defendant that he wanted to make some legal money and the Defendant told him that he could do marketing. The Defendant assisted Shepherd in opening a checking account by taking him to Old National Bank and giving him a check for $50.00 to open the account. At Old National Bank, Shepherd was given starter checks. Shepherd stated that the Defendant then directed him to the post office where the Defendant coached him through the purchase of $784 in postage stamps. Shepherd stated that the Defendant then directed him to the Hessen Cassel Branch to purchase more stamps, but the police arrived. Shepherd stated that he was not aware he was doing anything wrong.

In a follow-up interview conducted the next day at Shepherd's residence, he advised Inspector Gottfried that he met the Defendant a few years ago through his friend Mike Ewing. Shepherd provided Buckner's telephone number as 765-469-3053. Shepherd stated that Buckner lived in Peru, Indiana, with her husband, Randy Latta. Shepherd stated that the Defendant told him about a "legal" way to make money. According to Shepherd, on November 18, 2015, the Defendant picked him up in a 2015 or 2016 Ford Escape, gray in color, and drove him to Old

5

National Bank to open a checking account in his name. Shepherd deposited $50, but received some cash back. Shepherd stated that they then went to the Waynedale Station to purchase about 1,200 stamps, and that the Defendant told him she knew people who would purchase the stamps. When Inspector Gottfried showed Shepherd check 0003 in the amount of $784.00 made payable to the USPS dated November 18, 2015, Shepherd advised that he signed his name on the check but that the Defendant placed the other markings on the check.

The Defendant was also interviewed at the police station on November 18. She advised that she was with Shepherd when he opened the checking account earlier in the morning. She stated that she went with him to the Waynedale Post Office and the Hessen Cassel Post Office. She did not offer any other pertinent information.

Based on the above, the probation officer concluded that the Defendant "recruited Lincoln Shepherd and directed him in order to further her scheme after her conduct had been detected by the US Postal Service and she could no longer cash her own checks." (PSR ¶ 35.) The Defendant contends that the probation officer has it wrong; she did not recruit Shepherd, but rather, he "blackmailed her with threats to her family and threats of withholding drugs from the Defendant into showing him how the scam worked." (Def.'s Sentencing Mem. 8 (citing to the Defendant's August 11, 2017, hearing testimony).)

During the hearing, the Defendant testified that Shepherd had been her drug dealer for several years, and that she purchased drugs from him "[e]very other day, if not every day." (Hr'g Tr. 10.) However, after she was arrested for possession of cocaine, Shepherd told her that he was not going to deal with her anymore because she was "hot" and he knew she was "going to nark" on him. (*Id.*) Shepherd told her that the only way he would do anything with her is if she let him

6

in on her scam. (*Id.* at 10–11.) When asked about her decision to include Shepherd, the Defendant testified:

> A. I agreed that, you know, I would let him in on what I was doing and that he would continue being my cocaine dealer.
> Q. Okay. Did he ever threaten you or coerce you in any manner?
> A. Yes.
> Q. How so?
> A. Well, when he thought that I was going to tell on him, he would—he sent me texts and said "I know where your daughter lives. I know where you live." He thought I was going to tell on him, so I think he was scared.

(*Id.* at 11–12.) The Plaintiff noted that she did not need Shepherd's help to run her scheme, pointing to the fact that only Count 8 involved Shepherd. All other times, she acted on her own.

When the questioning turned to the events of November 18, 2015, the Defendant explained:

> He was not—you know, he didn't know what to do, and I was trying to help him do it. And he ended up, you know, getting mad at me, and so I was like, "Okay. I'll just walk you through this, and we'll get this over with," you know. I was—I did not want to do it that way, but I was addicted to cocaine and was ready to do anything to get it.

(*Id.* at 13.)

Upon reviewing the entire record, and observing the demeanor of the Defendant during her hearing testimony, the Court does not find her testimony concerning her relationship with Shepherd to be credible. The Defendant testified that she did not need Shepherd to continue passing bad checks, and pointed to the fact that Counts 1 through 7 did not involve Shepherd. During cross examination, it was revealed that post office employees in Fort Wayne refused to accept her check on August 13, 2015. Employees at a separate branch refused her check just a few days later, on August 17. The next time she went to a post office in Fort Wayne to attempt a

purchase was on November 18— with Shepherd.[1] The Defendant admitted that, when she went to the post office on November 18, she knew that she would not be able to present a check in her own name. (*Id.* at 33.) It is more likely than not that the Defendant recruited Shepherd when it became clear that presenting her own checks was going to be problematic.

It defies common sense that Shepherd, if he had concerns about the Defendant telling the police about his drug dealing, would negotiate *to keep* dealing drugs to her. And then, on top of that, to enter into *even more* criminal conduct with the very person he did not trust. Even if the Defendant included Shepherd, as she insists, out of a desire to maintain access to her cocaine supply, she still supervised and managed the scheme. Her motivation for involving Shepherd does not negate her level of control. By her own account, as well as those of the post office employees, Shepherd did not know what he was doing. The Defendant handled the entire transaction, with Shepherd merely supplying his signature on the check and showing his identification.

To make it appear that she had no choice, and thus was not actually in control despite appearances to the contrary, the Defendant testified that Shepherd threatened her family when he thought she was "going to tell on him." This is not believable either. The first time the Defendant mentioned these threats was during the evidentiary hearing, nearly two years after she was first interviewed by police regarding her transaction with Shepherd. She did not offer any proof of the threatening texts, either to law enforcement or to the Court.[2] When pressed about her failure to

---

[1] The Defendant was incarcerated from November 2 through November 16, 2016. (PSR ¶ 117.)

[2] At the hearing, the Defendant advised that her husband currently had her phone, so she did not know if the text messages were still available. When the Defendant's husband testified later, he was not asked any questions about the Defendant's phone.

confide with authorities about Shepherd's supposed threats, the Defendant claimed to be "very afraid of him." (Hr'g Tr. 39.) But she had testified earlier in the hearing that she considered him a friend, with whom she sometimes socialized. (*Id.* at 10). Moreover, it does not answer the question above; if Shepherd was concerned that the Defendant would expose him to law enforcement, why would he go to such efforts to keep dealing to her and become involved in other illegal activity with her.

The Court has reviewed the entire video recording of Shepherd's interview with police on November 18, 2015 (Ex. 4), which further confirms the Court's position that there is no truth in the Plaintiff's version of events. Shepherd willingly talked to the officers, but was completely unaware of what he had done wrong and clearly did not understand what he did that would be considered illegal. Shepherd explained that he told the Defendant he was short on money, and that she was going to help him start a mailing company and enroll him in school. She took him to a bank where he opened an account with a $50.00 check from the Defendant. He received $20.00 back in cash and was given starter checks, which he thought he could use immediately despite having only $30.00 in the account. His misguided beliefs were based on what the Defendant told him about how banking and finances worked. Additionally, he believed the Defendant was going to help him obtain a student loan. Shepherd is heard saying, "I feel like I got played. I don't know what's going on. I didn't do nothing wrong." The entire interview reveals Shepherd to be unsophisticated in the understanding of the financial transaction. He has the demeanor of someone who is telling the police everything that he knows and attempting to figure out what happened.

In contrast, the Defendant's testimony appeared to the Court to be a shifting narrative

9

aimed exclusively at reducing her culpability rather than offering the truth. Her past conduct, likewise, presents no reason to believe her. The Defendant has numerous convictions for crimes involving some element of deceit, untruthfulness, or dishonesty. (PSR ¶ 56 (passing bad check in 2001); *id.* ¶ 59 (passing bad check in 2005); *id.* ¶ 61 (check deception in 2007); *id.* ¶ 64 (passing bad checks in 2007); *id.* ¶ 68 (check deception in 2007); *id.* ¶ 70 (passing bad check in 2007); *id.* ¶ 72 (passing bad check, deception to obtain a dangerous drug in 2007); *id.* ¶ 75 (passing bad check in 2007); *id.* ¶ 76 (passing bad check in 2007); *id.* ¶ 78 (check deception in 2007); *id.* ¶ 80 (theft in 2008); *id.* ¶ 83 (criminal conversion in 2008); *id.* ¶ 86 (passing bad check in 2008); *id.* ¶ 89 (identity fraud in 2009); *id.* ¶ 91 (conversion in 2014); *id.* ¶ 94 (passing back checks in 2014); *id.* ¶¶ 107, 110 (check deception and conversion in 2015); *id.* ¶ 113 (check deception in 2015); and *id.* ¶ 118 (check deception in 2015).

The foregoing does not take into account numerous other arrests for similar deception. Neither has the Defendant shown herself opposed to manipulating the legal system for her own advantage. On March 12, 2015, while she was serving a sentence for passing a bad check, the Defendant wrote a letter to the judge requesting that she be allowed furlough due to medical issues and the need for ongoing treatment. On March 16, 2015, the court granted the request and ordered the Defendant to return to the detention center on March 23, 2015. On August 11, 2015, the Court ordered the furlough terminated and a warrant was issued for the Defendant's arrest due to her failure to return.

All of this being said about the Defendant's credibility, the nature of Shepherd's involvement presents a different issue with respect to the enhancement. A participant in a criminal activity is one who is criminally responsible for the commission of the offense.

Understanding that Shepherd was not charged criminally, that means that he must have been someone who "*could* have been charged." *United States v. Pabey*, 664 F.3d 1084, 1097 (7th Cir. 2011); *see also United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir. 1990) (stating that "the Sentencing Commission intended § 3B1.1 to apply only to situations where the offender organizes or leads criminally responsible individuals"). To be guilty under 18 U.S.C. § 641, Shepherd must have knowingly stolen the stamps and merchandise from the post office by presenting a check that he knew would not be honored. Shepherd's statements to law enforcement reveal that he mistakenly, but honestly, believed—based on assurances from the Plaintiff and statements from the bank employee—that use of the starter checks worked more like credit. Thus, he believed he was obtaining the merchandise through legitimate means. Because it has not been established that Shepherd intended any dishonesty or deceit, the Court finds it difficult to conclude that he was criminally culpable and should be considered a participant for purposes of § 3B1.1. Perhaps, had the criminal activity continued beyond November 18, 2015, something different would have been revealed about Shepherd, his understanding of the criminal activity, and his intent to participate. However, on the current record, the Defendant's offense involved only one criminally responsible person—herself. *Cf. United States v. Collins*, No. 15-1998, 2017 WL 6334023, at *4 (7th Cir. Dec. 12, 2017) (holding in a drug trafficking case that "a criminal who operates on his own, not as part of any organization, need not receive the enhancement because of an isolated incident" such as requesting another "to cover for him on one sale"). Therefore, the Court finds that the two level enhancement under § 3B1.1(c) does not apply and the PSR will be amended accordingly.

This finding, that the enhancement does not apply, will not prevent the Court from

considering whether the Defendant took advantage of Shepherd in an attempt to continue her scheme. It is part of both the "nature and circumstances of the offense" and the "characteristic of the defendant" that the court must consider to determine the sentence that is "sufficient but not greater than necessary to comply with the purposes of punishment" that are set forth in § 3553(a). 18 U.S.C. § 3553(a)(1). Likewise, the Court can consider that the Defendant used another individual's personal identifiers to open an eBay account, which then caused PayPal to contact that individual for payment of $5,000 it stated she owed. (PSR ¶ 22.) Additionally, the Defendant's attempt to avoid the enhancement through false testimony may impact her sentence.

**B.     Obstruction of Justice**

In its post-hearing brief, the Government argues that a separate sentencing enhancement applies because the Defendant obstructed justice by offering perjured testimony during the August 11, 2017, evidentiary hearing. Section 3C1.1 of the Sentencing Guidelines authorizes an obstruction of justice enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to" the sentencing of the offense of conviction, and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." The sentencing guidelines provide a non-exhaustive list of examples of the types of conduct to which § 3C1.1 applies. Application Note 4 identifies the following, which are relevant to this case: "committing, suborning, or attempting to suborn perjury." "A defendant commits perjury if, while testifying under oath, he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Chychula*, 757 F.3d 615, 619

(7th Cir. 2014).

The Government must prove a disputed fact relating to sentencing by the preponderance of evidence. *See United States v. Schroeder*, 536 F.3d 746, 753 (7th Cir. 2008) (reiterating that the Government's burden of proof at sentencing is that a fact has "sufficient indicia of reliability to support its probable accuracy" even if the fact would not be admissible at trial) (quoting *United States v. Artley*, 489 F.3d 813, 821 (7th Cir. 2007))). The Government has submitted compelling argument, but not reliable proof, that the Defendant committed perjury during the August 11, 2017, evidentiary hearing, and suborned perjury by her husband. Although the Government refers in its brief to the content of recorded jail calls between the Defendant and her husband, it would not be appropriate to accept the statements of counsel in a brief as evidence. No copies of the recorded calls, much less authenticated copies, are before the Court. This deficiency is presumably one that could be corrected. But even if the Court received evidence in support of the Government's assertion that the Defendant and her husband planned to, and did, lie about the Defendant's ability to be on her husband's health insurance, that evidence would not support application of the enhancement. The obstructive conduct regarding health insurance does not relate to the Defendant's offense of conviction or relevant conduct. Rather, it was intended to impact the Court's application of the § 3553(a) sentencing factors. The Defendant testified concerning her numerous physical and mental ailments, and argues that these "entitle her to a reduction in sentence." (Def.'s Sentencing Mem. 12, ECF No. 49.) She asserts that her mental health needs have been minimally addressed during her pretrial detention, and that the need for proper treatment "is paramount to her wellbeing" and necessary for her to "become stable enough to address her addiction issues." (*Id.* at 13.) She claims that this, in combination

13

with the concern that if some of her physical infirmities are not properly treated she might suffer significant future health issues, warrant a reduction in her sentence. These argument are not related to her offense of conviction, but to the history and characteristics of the Defendant.

Based on its own observations, the Court does find that the Defendant offered false testimony on August 11, 2017, in an attempt to influence the Court's determination whether she qualified for a § 3B1.1 enhancement for her role in the offense. These false statements, which are identified above, were related to the offense of conviction. *See United States v. Grigsby*, 692 F.3d 778, 785–86 (7th Cir. 2012) (finding that the defendant's false statements during a plea colloquy to minimize her role in the offense supported the obstruction of justice enhancement). The Defendant's testimony that she only involved Shepherd because she wanted him to keep supplying her with drugs and because he threatened her, was intended as evidence that would persuade the Court that the facts surrounding Count 8 did not support the organizer/supervisor enhancement. It was meant to counter the probation officer's conclusion that the Defendant recruited Shepherd when postal employees started to reject her checks. The Court agrees with the probation officer's factual assessment but, because there is no evidence that Shepherd was a criminally responsible participant, the enhancement could not apply regardless of what the Defendant testified to. The obstruction of justice enhancement does not apply unless the false statements were "material," meaning that "if believed, [they] would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment n.6; *see also United States v. Arambula*, 238 F.3d 865, 868–69 (7th Cir. 2001) (noting that not all lies warrant the enhancement "because a lie that is immaterial to the justice process is not a potential interference with it") (quoting *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir.1999)). Because the

Defendant's false testimony was inconsequential to the issue under determination—whether the managerial enhancement applied—it did not concern a material matter. The Court finds that the § 3C1.1 obstruction of justice enhancement does not apply to the circumstances of this case.

C.      **Acceptance of Responsibility**

Although the PSR awards the Defendant an acceptance of responsibility adjustment under § 3E1.1, the Government argues that it should now be removed because obstruction of justice is inconsistent with acceptance of responsibility. The Seventh Circuit has, indeed, held that "merely pleading guilty is not enough for the defendant to receive a reduction for acceptance of responsibility, especially in the face of false statements." *United States v. Partee*, 301 F.3d 576, 581 (7th Cir. 2002) (citing *United States v. Gage*, 183 F.3d 711, 717 (7th Cir. 1999)); *United States v. Davis*, 442 F.3d 1003, 1010 (7th Cir. 2006) (upholding denial of reduction for defendant who pleaded guilty but presented no evidence that she negated the effect of her obstruction).

Here, the Defendant has entered pleas of guilty to all counts of the Indictment and truthfully admitted the conduct comprising the offenses of conviction. Because the Court has determined that the Plaintiff's false statement were immaterial, it concludes that she it still entitled to the acceptance of responsibility enhancement.

D.      **Guideline Range and Variance**

Based on the Court's rulings, the Defendant's offense level is 10. This, combined with her criminal history category of VI, yields a Guideline range of 24 to 30 months of

imprisonment.

A district court may not presume that the guideline sentence is the correct one. *Rita v. United States*, 551 U.S. 338, 351 (2007). Both the Defendant and the Government have argued that the Guideline sentence is not the sentence that satisfies the purposes of punishment set forth in 18 U.S.C. § 3553(a). The Defendant maintains that her physical and mental health, as well as the impact of her cocaine addiction on her decision to commit the instant offenses, warrant a reduced sentence. The Government disagrees, and additionally submits that the Defendant should receive a sentence above the Guideline range because her criminal history category substantially under-represents the seriousness of her criminal history and the likelihood that she will commit additional crimes. The Court reserves a determination of the appropriate term of imprisonment, on these grounds or any others, until after the Defendant has had an opportunity to address the Court. *See* Fed. R. Crim. P. 32(i)(4)(A)(ii).

## CONCLUSION

For the reasons stated above, the Court finds that the Defendant was not a leader or organizer, that the § 3C1.1 obstruction of justice enhancement does not apply, and that the Defendant is still entitled to a reduction for acceptance of responsibility. At the time of the sentencing hearing, the Court will consider all factors to determine the appropriate sentence.

ENTERED: December 21, 2017.

                                       s/ Theresa L. Springmann
                                       CHIEF JUDGE THERESA L. SPRINGMANN
                                       UNITED STATES DISTRICT COURT